**GARBARINI FITZGERALD P.C.**
250 Park Avenue
7th Floor
New York, New York 10177
Phone: 212.300.5358
Fax: 888.265.7054
www.garbarinilaw.com

August 15, 2019

VIA ECF

Hon. Naomi Reice Buchwald
Sr. U.S. District Court Judge
United States District Court
Southern District of New York
500 Pearl Street New York, N.Y. 10007

Re: *Simon J. Burchett Photography, Inc. v. Seaspan Corp*, 19-cv-1269 (NRB)

Your Honor:

I represent the plaintiff in the above referenced matter, and write in response to the defendant's request for a pre-motion conference dated August 14, 2019. (Dkt. No. 19.) To clarify the facts, there are eight images in dispute in this matter. See Compl. at ¶¶ 1, 61, 82. (Dkt. No. 1.) Plaintiff agreed to send four images, to be used in the Seaspan 2010 Annual Report only. Compl. at ¶¶ 181-85. Seaspan, however, had already been using the four images without the plaintiff's knowledge. Compl. at ¶¶ 187-201. Seaspan didn't use the one image that was sent. Compl. at ¶ 157.

Without license or authorization Seaspan used all eight images, in numerous commercial ways, and concealed its infringements by marking plaintiff's images as being created and owned by Seaspan. Compl. at ¶ 194. The parties absolutely differ on whether the May 2011 Invoice was a contract, what images it pertained to, and the uses of those images. There are four images which defendant admits here were not licensed, and plaintiff seeks to move for partial summary judgment on liability for those images.

**STATUTE OF LIMITATIONS**

Defendant has ignored the fact that "when a defendant commits successive violations, the statute of limitations runs separately from each violation." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969 (2014). In this circuit, "'each act of infringement is a distinct harm giving rise to an independent claim for relief. . . ..'" *Byron v. Chevrolet Motor Div. of Gen. Motors Corp.*, 1995 U.S. Dist. LEXIS 11115, *10, (quoting *Stone v. Williams*, 970 F.2d at 1049-50) (ellipsis in *Byron*).

In the three years preceding the filing of the Complaint here, each of the eight contested images had been copied, commercially exploited, and distributed by defendant in violation of

plaintiff's exclusive rights pursuant to 17 U.S.C. § 106. For example, the Seaspan 2018 Q1 SEC report contained images which would not be subject to a motion to dismiss based on the statute of limitation. See Compl. at ¶ 99. Defendant also prepared a presentation for the Ivey School of Business containing the images, which, again, would not be subject to the statute of limitation. See Compl. at ¶¶ 115-18. In the past three years defendant offered plaintiff's images to the public both in its "Press" page and by allowing third-parties to right click and download each image. Compl. at ¶ 124. On May 25, 2018 MarineLink downloaded plaintiff's image from defendant's Press page. Compl. at ¶ 113. MarineLink did so at the direction of the defendant. Each of the contested images has been uploaded from defendant's "Press" page in the past three years, making the statute of limitation claim futile.

Further, this Circuit also follows the discovery rule, pursuant to which "copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). Copyright owners also do not have a general duty to police their copyrights. See, e.g., *Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 119 (2d Cir. 2018). *H. M. Kolbe Co. v. Armgus Textile Co*., 315 F.2d 70, 74 (2d Cir. 1963) (holding that copyright owner has no affirmative duty to police subsequent distributions of his own product); Cf *Design Basics, LLC v. Chelsea Lumber Co*., 977 F. Supp. 2d 714, 725 (E.D. Mich. 2013) ("The Court . . . rejects [d]efendants' argument that [p]laintiff was under a continuous duty to police its copyright . . . .").

This means plaintiff's claims began to accrue when plaintiff knew or should have known through the exercise of reasonable diligence of that defendant was infringing its images. As an initial matter, Seaspan allowed third-parties to download and use plaintiff's images, provided the third-party credit Seaspan as the owner and author of the image(s) used. Compl. at ¶ 53. Each of the images have been downloaded by third-parties in the last three years making defendant's argument futile.

As alleged, defendant changed the copyright management information to show it was the author and owner of the images. Compl. at ¶¶ 3,8,53. This made it impossible for plaintiff to identify the infringing acts of defendant. Plaintiff had no reason to check defendant's website, and it was impossible to discover the various Investor Presentations, advertisements on marine based websites, or business school presentations. It would be futile to proceed with a statute of limitation claim as the plaintiff's claims did not begin to accrue until November 2018 when plaintiff was notified by a third-party. See Compl. at ¶ 187.

**THE PURPORTED LICENSE**

In June 2018, defendant's agent requested four aerial images, to be used in the Seaspan 2010 Annual Report only. Compl. at ¶146. Plaintiff agreed and sent an invoice for this use. Compl. at ¶ 180. First, plaintiff has claimed defendant did not use any of the image(s) sent. Compl. at ¶ 157. Defendant has yet to produce any documentation to refute this fact. Thus, the purported license is irrelevant.

The request came four days before the highly edited and produced 2010 Annual Report was released. This means defendant illegally copied plaintiff's images and sent them to the report producer. The producer, Kuni Designs, realized there was no licenses for plaintiff's images days

before the release. Defendant had been using plaintiff's images in prior reports and on its website for at least three years without the plaintiff's knowledge. Compl. at ¶¶ 187-201. Seaspan used all eight images, in numerous commercial ways, and concealed its infringements by marking plaintiff's images as being created and owned by Seaspan. Compl. at ¶ 194. Seaspan fraudulently induced the limited use contract because it failed to disclose it had already been commercially exploiting the images. Seaspan cannot deceive plaintiff and then seek to be rewarded from the fruit of its deceit.

**STATUTORY DAMAGES AND ATTORNEY'S FEES**

Defendant's acts of distributing the images to third-parties are separate acts for determining liability. All eight images were distributed by defendant after the date of the U.S. Copyright Registration, and are subject to statutory damages and attorneys' fees. Defendant's claim is therefore futile.

**UNJUST ENRICHMENT**

The Copyright Act preempts a state law claim "when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act . . . and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). "In other words, when a state law claim is essentially identical to a copyright infringement claim, the state law claim is preempted." *Young-Wolff v. McGraw-Hill Sch. Educ. Holdings, LLC*, 2015 U.S. Dist. LEXIS 39643, @ 11 (S.D.N.Y. 2015).

Under that standard, an unjust enrichment claim is generally preempted where it seeks damages for the unauthorized use of a copyrighted work. Plaintiff's claim, however, goes to the advertising and social media campaign that created millions to hundreds of millions of dollars. If defendant is willing to stipulate that the forgoing is subject to the damages recoverable under the Copyright Act, then plaintiff will withdraw this claim.

**CONCLUSION**

Each of the issues raised by the defendant would be futile, or best served by a stipulation.

GARBARINI FITZGERALD P.C.

By: _____
Richard M. Garbarini

cc: Counsel for defendant by ECF.